UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE PROCTER & GAMBLE COMPANY, | : | Case No. 1:08-CV-565 |
| Plaintiff, | : | Hon. Thomas M. Rose |
| vs. | : | **REPLY IN FURTHER SUPPORT OF DEFENDANT RNA CORPORATION'S** |
| RNA CORPORATION, | : | **RULE 12(B)(2) MOTION TO DISMISS FOR LACK OF PERSONAL** |
| Defendant. | : | **JURISDICTION** |

Defendant, RNA Corporation ("RNA"), submits this Reply In Further Support of Its Motion to Dismiss the Complaint of Plaintiff, The Procter & Gamble Company ("P&G"), for Lack of Personal Jurisdiction under Rule 12(b)(2).

## INTRODUCTION

P&G's Response ignores the undisputed fact that RNA: (1) did not sell, ship or market the alleged infringing product in Ohio; (2) had no control over what state Family Dollar sold the Family Dollar Shampoo and Conditioner; (3) did not design or manufacture the alleged infringing bottles and labels, but simply filled them with the actual shampoo and conditioner, which are not at issue in this case; and (4) did nothing improper in purchasing the bottles from an Ohio company, which will soon be issued a design patent for the bottles. P&G also ignores the controlling Ohio law cited in RNA's Memorandum, including the factually analogous Cleveland Browns Football Co. decisions, which held that an out-of-state manufacturer, which only sold and shipped the allegedly infringing Cleveland Browns merchandise to national retailers (e.g., Wal-Mart), all of whom were outside of Ohio, who then sold the goods in Ohio, did not fall within the Ohio long-arm statute. Instead, P&G cites to a collection of inapposite law, facts not relevant to a proper jurisdictional analysis, and "facts" not supported by the record.

## JURISDICTIONAL FACTS

Because P&G's Response[1] contains inaccurate and unsupported facts that bear directly on RNA's lack of contact with Ohio, RNA will summarize the relevant jurisdictional facts that are supported by the undisputed facts in the record currently before this Court, including facts as to RNA's contacts with Ohio developed by P&G in both written and oral discovery after the filing of RNA's Rule 12(b)(2) Motion to Dismiss.

As the pictures attached to both parties' briefs show, the alleged infringing product here is the bottle and label of the "Family Dollar Shampoo and Conditioner," not the "RNA Shampoo and Conditioner." There is no such thing as an RNA product because RNA does not sell "RNA products" to the public, either directly or indirectly through retail distributors. [Harms Dep. at 17.] RNA is a "contract manufacturer" of health and beauty products for name brand and generic products, in this case the "Family Dollar" store brand. [Id. at 30-32.] RNA's contribution to the Family Dollar Shampoo and Conditioner is that, at the request of Family Dollar, it produces the actual shampoo and conditioner, fills the alleged infringing bottles, attaches third-party labels, and ships them to Family Dollar's regional distribution centers, none of which are located in Ohio. [Id. at 17, 41-42, 44-51.] RNA did not design, approve, or manufacture the alleged infringing bottles or labels and has no control or knowledge of where they are sold. [Id. at 17, 41-42, 44-51.]

---

[1]   The "Response" refers to P&G's Memorandum in Opposition to Plaintiff's Motion to Dismiss for Lack of Personal Jurisdiction. To the extent not otherwise defined in this "Reply," capitalized terms have the same meaning as set forth in RNA's Memorandum in Support of its Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction ("Memorandum") ("Motion"), which is incorporated herein by reference, including the Affidavit of John Harms, RNA's Director of Sales & Marketing. References to paragraphs therein are cited herein as "[Harms Aff. at ¶__.]". Attached hereto as Exhibit A is the deposition of John Harms taken by P&G, and references to its pages are designated herein as "[Harms Dep. at __.]". Attached hereto as Exhibit B is the Declaration of Robert Kellerman, the Chief Financial Officer of GK Packaging, Inc. ("GK"). References to paragraphs therein are cited herein as "[Kellerman Aff. at ¶__.]".

In 2007, Family Dollar requested that RNA create and manufacture a generic version of P&G's Herbal Essence shampoo and conditioner, which Family Dollar could sell under the Family Dollar "private label." [Id. at 44.] Because RNA does not design or manufacture bottles or labels, RNA contacted several bottle and label manufacturers. GK Packaging, Inc. ("GK"), a bottle manufacturer in Ohio, told RNA that it was already "in the midst" of creating a mold for a bottle "something like" that used by P&G for its Herbal Essence line (the "GK Bottle"). [Id. at 45, 64-65.] In fact, well before it was contacted by RNA, on August 24, 2006, GK filed a design patent application with the U.S. Patent and Trademark Office ("USPTO") for the GK Bottle. On October 3, 2008, the USPTO notified GK that it intended to issue a design patent on the GK Bottle. [Kellerman Aff at ¶¶3-6.] Like the GK Bottles, RNA did not create, design, or manufacture the alleged infringing label; rather, the label was manufactured and provided to RNA by a third party company in Chicago, Illinois. [Id. at 40.]

RNA has never sold, shipped, or marketed Family Dollar Shampoo and Conditioner in Ohio (or anywhere else). [Harms Aff. at ¶ 20.] In the last 12 months, without any input or control by RNA, Family Dollar sold approximately 13,500 units of the Family Dollar Shampoo and Conditioner (out of 420,000 total units purchased) in Family Dollar stores in Ohio.[2] [Id. at ¶¶ 21-23.] The indirect sale of these units in Ohio by Family Dollar constitutes roughly .041% of RNA's total sales in the last 12 months. [Id. ¶¶ 19, 23.]

---

[2] P&G's contention that the fact RNA requested Family Dollar to determine the volume of Family Dollar Shampoo and Conditioner sold in Ohio, shows that "RNA knew full well that the infringing merchandise it shipped to Family Dollar's Morehead, Kentucky distribution center would be sold in the chain's Ohio stores," [Response at 9], is misleading. RNA did not request Family Dollar to make this determination until after P&G filed this suit. [Harms Dep. at 49, 51 and Ex. 7 thereto (August 29, 2008, e-mail to Harms from Family Dollar with the Ohio sales information) (a copy of which is attached hereto as Exhibit C).] RNA, in fact, did not know or have any control over where Family Dollar sells the Family Dollar Shampoo and Conditioner. [Harms Dep. at 17, 47; Harms Aff. at ¶16.] Moreover, as explained in Section I, RNA's purported knowledge of where Family Dollar sells the alleged infringing product is irrelevant under Ohio law.

In addition, RNA has only one health and beauty supply customer located in Ohio – Aldi Food Stores ("Aldi"). [Harms Dep. at 18.] In the last 12 months, RNA has shipped $43,000 worth of goods (not the Family Dollar Shampoo and Conditioner) to Aldi in Ohio, which represents only .36% of RNA's total sales for the last 12 months. [Id. at 21.]

RNA has never sold Family Dollar Shampoo or Conditioner or any product, for that matter, over the Internet. RNA's website "is used only for informational purposes" and does not even mention Family Dollar or the Family Dollar Shampoo and Conditioner. [Id. at 29; see also Exs. 4-6 to P&G's Response (RNA's website).] RNA "gain[s] no customers from it." [Id.] The RNA website has never generated a single inquiry from Ohio or any where else either via the telephone or e-mail. [Id. at 30.] Likewise, the "fast quote" option on the website has never been used. [Id. at 35.]

Ignoring the above uncontested facts in the record, P&G asserts, without citation to the record or to citations that are not supported and/or contradicted by the record, that:

- the alleged infringing product (the bottles and labels of Family Dollar Shampoo and Conditioner) is an RNA product [Response at 1, 11];

- "RNA admits that it sells and distributes in Ohio through Family Dollar" [id.];

- Family Dollar is an "independent distributor" for RNA products [id.];

- the alleged infringing bottles are a "deliberate creation of" RNA [id. at 8];

- RNA "approved" the alleged infringing bottles [id. at 2, 8];

- RNA "aimed," "targeted," and "focused" the alleged infringing product at Ohio [id. at 3, 8];

- RNA "plainly derives substantial revenue from the sale of both infringing and non-infringing merchandise in Ohio" [id. at 15];

- "RNA regularly solicits business from Ohio" customers over the Internet, [id. at 12]; and

4

- "RNA's primary forum of advertising [is] its website." [Id. at 13]

As detailed above, none of the above purported factual assertions are true, and are, in fact, contradicted by the undisputed facts currently before this Court, including those developed by P&G in jurisdictional discovery.

P&G also fills its Response with irrelevant facts that have no bearing on whether RNA's out-of-state activities fall within the Ohio long-arm statute. For example, while P&G alleges that RNA has tried to "mislead" this Court by filing a "frivolous" suit in the Northern District of Illinois. [Response at 1.] P&G, however, has offered to stay the Illinois action until resolution of this Motion. Moreover, RNA has not argued that this related suit in any way bears on personal jurisdiction in Ohio. P&G also sets forth the following assertions that have no bearing on whether RNA falls within the Ohio long-arm statute: (1) the Motion is a "delaying tactic" [id. at 19]; (2) "consumers" are harmed by the sale of the Family Dollar Shampoo and Conditioner [id.]; and (3) "GK sent a sample of the bottle for approval and also sent a representative from Ohio to RNA's offices in Illinois." [Id. at 3.]

## ARGUMENT

RNA does not fall within the Ohio long-arm statute because: (I) RNA did not commit a "tortious" "act" in Ohio, as required by Subsection A(3); (II) RNA did not "caus[e] tortious injury in this state," as required by Subsections A(3), (4), and (6); (III) P&G has not (and cannot) show that RNA committed an act outside of Ohio "with the purpose of" "causing tortious injury in this state," as required by Subsection A(6); (IV) the alleged acts of infringement did not "arise out of the transaction of business in Ohio," as required by Subsection A(1); (V) RNA does not derive "substantial revenue" from Ohio, as required by Subsection A(4); and (VI) RNA does not regularly solicit business from Ohio, as required by Subsection A(4).

I.    **RNA Did Not Commit A Tortious Act In Ohio.**

To fall within Subsection A(3), RNA must have committed a tortious act in Ohio. Hilderbrand v. Steck Manuf. Co., Inc., 279 F.3d 1351, 1354 (Fed. Cir. 2002) (affirming dismissal for lack of personal jurisdiction, the Federal Circuit held that Subsection A(3) requires "the presence of the alleged tortfeasor" and commission of the tortious act in Ohio); Logan Farms v. HBH, Inc., 282 F. Supp. 2d 776, 795 (S.D. Ohio 2003) (granting non-resident's Rule 12(b)(2) motion, the court held that under Subsection A(3) "both the tortious act and the injury must occur within the state of Ohio"); Irizarry v. East Longitude Trading Co., Ltd., 296 F. Supp. 2d 862, (N.D. Ohio 2003) (dismissing non-resident defendant because the "alleged tortious act . . . did not occur in Ohio," the court found that "[S]ubsections (1) and (3) contemplate conduct that occurs in Ohio").

The torts of patent and trademark infringement "occur[] where the sale of the infringing product occurs." Bath & Body Works, Inc. v. Wal-Mart Stores, Inc., No. C-2-99-1190, 2000 WL 1810478, at *4 (S.D. Ohio 2000) (denying Rule 12(b)(2) motion to dismiss out-of-state defendant/manufacturer of alleged infringing product because defendant sold the item directly to customers in Ohio). See also Trintec Industries, Inc. v. Pedre Promotional Products, Inc., 395 F.3d 1275, 1280 (Fed. Cir. 2005) (the tort of infringement occurs at "the place of infringing sale"); Embs v. Jordan Outdoor Enter. Ltd., No. 2:03-cv-895, 2004 WL 2233366, at *5 (S.D. Ohio March 25, 2004) (granting Rule 12(b)(2) motion to dismiss patent infringement action brought by Ohio plaintiff/patent holder because the alleged infringer "never sold any such product in Ohio"). Consequently, because RNA did not sell, ship, or market the Family Dollar Shampoo and Conditioner in or to Ohio, RNA does not fall under Subsection A(3).

6

In an attempt to avoid the unambiguous language of Subsection A(3) and the undisputed facts and law (including that infringement occurs at the point of sale), P&G contends that RNA sold the Family Dollar Shampoo and Conditioner in Ohio through its "independent distributor" Family Dollar. [Response at 9, 11.] Putting aside the fact that this contention has no basis in fact, this contention was specifically rejected in <u>Cleveland Browns Football Co., LLC v. Hawaii-Pacific Apparel Group, Inc.</u>, Case No. 1:00CV1162, at 2-3 (N.D. Ohio January 29, 2001 [a copy of this Opinion is attached hereto as <u>Exhibit D</u>]), <u>aff'd</u> 90 Fed. Appx. 868, 869, 2004 WL 232731 (6th Cir. Feb. 2, 2004). Granting a Rule 12(b)(2) motion, the district court held that a California defendant did not commit a tortious act in Ohio under Subsection A(3) because the California defendant only sold the alleged infringing product "out-of-state" to "national retail chains, such as K-Mart, Wal-Mart, and Sears," which then sold the product in Ohio. The district court held that Subsection A(3) "requires an actual transaction connected with Ohio, not merely an indirect economic impact on Ohio . . . and placing goods into a stream of commerce that ends in Ohio is insufficient." [<u>Exhibit D</u> at 3.]

The plaintiff in <u>Cleveland Browns</u> alleged that the California defendant violated the Lanham Act and Ohio unfair competition law by using the Cleveland Browns' "Dawg Pound" trademark on clothes manufactured by plaintiff in California. 90 Fed. Appx. 868, 869, 2004 WL 232731, at *1 (6th Cir. Feb. 2, 2004) (a copy of this Sixth Circuit opinion is attached hereto as

7

Exhibit E).[3] The California defendant, however, did not directly ship or sell the alleged infringing product to Ohio. Id. Instead, the California defendant only sold the alleged infringing clothes to national retailers and shipped the goods to the retailers' regional distribution centers, none of which were located in Ohio. Id. The record also showed that the California defendant had **"no control over distribution of the goods after delivery to the retail sellers."** Id. (emphasis added).

In dismissing the Ohio complaint for lack of personal jurisdiction, both the District Court and the Sixth Circuit rejected the Ohio plaintiff's contention that "the [California] defendant's sale of goods to major retailers [including Wal-Mart], who then sold them in Ohio, constituted a sufficient basis on which to exercise personal jurisdiction [in Ohio] over the [California] defendant." Id. See also Stephan v. Babysport, LLC, 499 F. Supp. 2d 279, 287 (E.D.N.Y. 2007) (interpreting similar New York long-arm statute, the court held that the out-of-state defendant's sales of the alleged infringing product to a national retailer (7-Eleven), who then sold the alleged infringing product in New York, did not constitute a tortious act in New York, where the out-of-state defendant did not directly sell or ship the alleged infringing product into New York but only to the national retailer in Texas).

---

[3] Almost identical to P&G's personal jurisdiction allegations [P&G Compl. at ¶ 5], the Ohio plaintiff in Cleveland Browns alleged that:

> 13. This Court has jurisdiction over the person of Defendant under Section 2307.382 of the Ohio Revised Code by virtue of its transacting business in this State, contracting to supply goods in this State, and causing tortuous injury in this State as described herein.
> ***
> 29. Upon information and belief, Defendant's merchandise was calculated to be sold and is likely to continue being sold in the same retail outlets, and in the same sections of such retail outlets, as Browns merchandise. Upon information and belief, Defendant has sold and distributed the aforesaid merchandise to retail outlets in and around Cleveland, Ohio in close proximity to Browns merchandise.

[A copy of the Complaint in Cleveland Browns is attached hereto as Exhibit F.]

Here, indistinguishable from the out-of-state defendant in Cleveland Browns, RNA did not manufacture, ship, sell, or market Family Dollar Shampoo and Conditioner in Ohio. Instead, RNA simply filled the GK Bottles at its Illinois plant and shipped them to Family Dollar's regional distribution facilities outside Ohio. Family Dollar is not an independent distributor for RNA products. In fact, there is no such thing as RNA products. RNA, like the California defendant, had no control over where Family Dollar, a national retailer, sold the alleged infringing product.

P&G's contention that "RNA knew full well that the infringing merchandise it shipped to Family Dollar's Morehead, Kentucky distribution center would be sold in the chain's Ohio stores" [Response at 9], even if true, which it is not [Harms Dep. at 17], is irrelevant under Ohio law. The California defendant/manufacturer in Cleveland Browns obviously knew that Wal-Mart, Sears, and Kroeger would sell the alleged infringing Cleveland Browns clothing in Ohio, the home of the Cleveland Browns. Nevertheless, the Sixth Circuit affirmed the district court's dismissal for lack of personal jurisdiction. See also Stephan, 499 F. Supp. at 287 (holding that the fact the out-of-state defendant knew a third-party buyer has retail stores (7-Eleven) "throughout the United States," including New York, "constitutes neither knowledge of the [alleged infringing] products' ultimate destination nor purposeful availment of the protection of New York laws").

Even though RNA's Memorandum discussed the Cleveland Browns case at length, P&G does not even attempt to distinguish it from this case. Instead, P&G [Response at 7-8] relies on cases that are factually distinguishable from the present case because these cases concerned alleged infringing products sold under the foreign defendant's name brand that the defendant

9

manufactured in foreign countries and sold through independent retail outlets in the United States under "exclusive distribution agreements" with the foreign manufacturer.

For example, in State ex rel. Attorney General v. Grand Tobacco, 871 N.E.2d 1255, 1257, 1260 (Ohio App. Ct. 2007), the Ohio attorney general sued an Armenian cigarette manufacturer seeking restitution under "the Tobacco Master Settlement Agreement" based on the fact that 25 million of defendant's name brand cigarettes, that defendant manufactured in Armenia, had been purchased in Ohio. Id. The Armenian defendant moved to dismiss on the grounds that it did not directly sell or ship any cigarettes in Ohio. Id. at 1258. The Ohio Court of Appeals rejected this contention because it found "evidence of a close, ongoing relationship between [the Armenian defendant] and its [United States] distributor . . . that went beyond that of a typical manufacturer and importer/distributor relationship, including evidence that [the distributor] acted on behalf" of the Armenian defendant's interests in the United States, including filings to the U.S. Centers for Disease Control on behalf of the Armenian defendant. Id. at 1261.

Similarly, in Gor-Vue Corp. v. Hornell Elektrooptik AB, 634 F. Supp. 535, 536 (N.D. Ohio 1986), an Ohio plaintiff/patent holder sued a Swedish manufacturer, which manufactured the alleged infringing product in Sweden. The alleged infringing product was directly sold and advertised in Ohio through a Pennsylvania company that executed an exclusive distribution agreement with the Swedish defendant, giving the Pennsylvania company "exclusive sales control in Ohio." Id. at 539. Based on this exclusive Ohio distribution agreement, the court held that personal jurisdiction over the Swedish defendant was proper. Id.

P&G also cites to Signom v. Schenck Fuels, Inc., No. C-3-07-037, 2007 WL 1726492, at *6 (S.D. Ohio 2007), for the proposition that "jurisdiction is proper over a non-resident whose distributor provides an established distribution channel . . . in Ohio." [Response at 7.] What P&G

fails to mention, however, is that Signom did not even involve an independent distributor selling an alleged infringing product in Ohio or out of state. Instead, the Ohio plaintiff in Signom filed a complaint, which was dismissed under Rule 12(b)(2), for breach of contract and consumer fraud against a New York plumber for negligent work on an Ohio resident's summer home in New York. Id. at *5-6.  This Court in Signom never addressed whether a out-of-state manufacturer could be subject to the Ohio long-arm statute. Instead, generally discussing Subsection A(1), not A(3), this Court, citing to Grand Tobacco, noted that Section (A)(1) can "provide[] jurisdiction over a foreign tobacco company whose American distributor provided an established distribution channel that included tobacco sales in Ohio." Id. at *6.

Here, in contrast to the above cases, the alleged infringing product is a Family Dollar generic store brand, approved by Family Dollar for sale in Family Dollar Stores. RNA, at the request of Family Dollar, simply manufactured the actual shampoo and conditioner and then filled the GK Bottles. After shipping to Family Dollar outside of Ohio, RNA has no control (and never had control) of where and how Family Dollar sells and markets the alleged infringing Family Dollar Shampoo and Conditioner. Accordingly, RNA does not fall within Subsection A(3) because it did not commit a "tortious act" in Ohio under any plausible theory.

II.     **RNA Did Not Cause A Tortious Injury In Ohio.**

Putting aside the fact that RNA did not commit a "tortious act" in Ohio, Subsection A(3) also does not apply to RNA, nor do Subsections A(4) and (6), because RNA did not "caus[e] a tortious injury" in this state, as required by these Subsections. See Hilderbrand, 279 F.3d at 1355 (Subsection A(3) requires that the tortious injury "occur in Ohio"); Logan Farms, 282 F. Supp. 2d at 795 (same); Signom, 2007 WL 1726492, at *8 ("section (A)(6) does not provide

jurisdiction where the injury occurred in another state"); Subsection A(4) ("causing tortious injury in this state").

In an attempt to avoid the in-state injury requirement, P&G contends that RNA sold the alleged infringing product in Ohio through its "independent distributor" Family Dollar. [Response at 9, 11.] As detailed above, this theory fails as a matter of fact and law. Indeed, had the Sixth Circuit in <u>Cleveland Browns</u> believed that the California defendant's sale of the "Dawg-Pound" clothing to Wal-Mart outside of Ohio constituted a tortious injury in Ohio, the Sixth Circuit would not have affirmed the district court's dismissal under Rule 12(b)(2).

Realizing that its independent distributor theory does not hold water, P&G also contends that it suffered an injury in Ohio because its principal place of business is in Ohio, and, thus, Ohio is where P&G felt the impact of the infringement. [Response at 11-12.] This contention, however, would result in any defendant, even if it had absolutely no contact whatsoever with Ohio, being subject to personal jurisdiction in Ohio simply by the act of selling a product in another state that allegedly infringes upon a P&G patent or trademark.

Not surprisingly, P&G's overly broad legal assertion is contradicted by the established body of law holding that the "tort of patent infringement" and the "situs of the injury . . . occurs where the infringing sale was made" and "not where the injury is felt." <u>Glasstech, Inc. v. TLG Tempering Sys., Inc.</u>, 50 F. Supp. 2d 722, 726-27 (N.D. Ohio 1999) (dismissing patent infringement action under Rule 12(b)(2), even though the plaintiff/patent holder's principal place of business was in Ohio, because the out-of-state defendant only sold the alleged infringing product outside of Ohio). [See also <u>supra</u> at 6.]

A close examination of the cases cited by P&G (only two of which involve the Ohio long-arm statute) [Response at 11-12] do not support P&G's broad proposition. For example,

contrary to the facts of this case, Gor-Vue Corp., 634 F. Supp. at 537-38, involved an infringing name brand product (not a store brand) that was sold in Ohio by a third-party pursuant to an "exclusive [Ohio] distributorship" agreement with the out-of-state defendant to sell the defendant's product in Ohio. Similarly, the plaintiff in Bird v. Parsons, 289 F.3d 865, 869-70 (6th Cir. 2002), alleged that the out-of-state defendant violated the Ohio plaintiff's trademark and copyright, not by the sale of an alleged infringing product in Ohio, but by copying the Ohio plaintiff's "domain name" and using it on the Internet. In Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Limited Partnership, 34 F.3d 410, 411-12 (7th Cir. 1994), the Indianapolis Colts football team asserted that a Canadian Football League's team use of the "Colts" team name violated the Indianapolis Colts trademark and fell under the Indiana long-arm statute. The district court in Cleveland Browns Football Co., LLC, Case No. 1:00CV1162, at *3 (Exhibit D, hereto), specifically rejected the application of Indianapolis Colts, Inc. in Ohio because "unlike Ohio's [long-arm] statute," the Indiana long-are is "is coextensive with the Due Process Clause."

Consequently, because RNA did not sell or ship the Family Dollar Shampoo and Conditioner into Ohio but only to Family Dollar outside of Ohio, it did not cause an injury in Ohio and does not fall within Subsections A(3), (4), or (6).

### III. RNA Did Not Commit An Act Outside Of Ohio "With The Purpose Of" "Causing Tortious Injury In This State."

In addition to the fact that RNA did not cause a tortious injury in Ohio, Subsection A(6) does not apply because RNA did not commit a tortious act outside of Ohio "with the purpose of" "causing tortious injury in this state" (which is a separate requirement under Subsection A(6)).

Ignoring the fact that RNA has **no control** over where Family Dollar sells the alleged infringing product, P&G contends that RNA knew that it "could foreseeably injure P&G in

Ohio" because RNA knew that P&G is an Ohio company and knew that Family Dollar has stores in Ohio. [Response at 8-9.] Even if RNA should have foreseen where Family Dollar would sell the alleged infringing product, any such foreseeability is irrelevant. See supra at 9. In Cleveland Browns, the Ohio plaintiff contended that Subsection A(6) was applicable because the out-of-state defendant would have reasonably known that: (1) the Ohio plaintiff, the Cleveland Browns football team, was located in Ohio; and (2) Wal-Mart, Sears, and Kroeger would sell the alleged infringing merchandise ("Cleveland Browns" clothes) in Ohio. Nevertheless, the Sixth Circuit affirmed the district court's dismissal for lack of personal jurisdiction. [Exhibits D and E.]

Nevertheless, P&G broadly contends that "Ohio courts have also recognized the applicability of subsection (A)(6) in circumstances analogous to those here." [Response at 9-10.] P&G's string cite of cases in support of this broad statement are inapposite. Not one of P&G's cited cases is an infringement case, let alone an infringement case where an out-of-state defendant did not ship or sell the alleged infringing product in Ohio. P&G's cases, in contrast, involve intentional conduct, such as fraud or defamation specifically directed at an Ohio plaintiff or breach of contract with an Ohio resident. These cases thus are inapplicable here and do not overcome the clear holding in Cleveland Browns and the fact that RNA had no control over the Family Dollar Shampoo and Conditioner once it left its plant in Illinois.

Accordingly, in addition to the fact that RNA did not cause an injury in Ohio, Subsection A(6) does not apply because RNA did not commit a tortious act outside of Ohio "with the purpose of" "causing tortious injury in this state."

**IV.    The Sale Of The Alleged Infringing Product In Ohio Did Not Arise Out Of RNA's Transaction Of Business In Ohio.**

As detailed in RNA's Memorandum [at 6-7], even if RNA's purchase of the GK Bottles constitutes "[t]ransacting any business in this State," Subsection A(1) still requires P&G to show

that its "cause of action" (the sale of the Family Dollar Shampoo and Conditioner in Ohio) "arose out of" RNA's purchases of the alleged infringing bottles from GK. See Brunner v. Hampson, 441 F.3d 457, 464 (6th Cir. 2006) (affirming dismissal for lack of personal jurisdiction the court held that Subsection (A)(1) requires that cause of action must have arisen out of the business transacted in Ohio under A(1)). P&G contends, without citation to the factual record, that it has met the Ohio long-arm statute's "arising from" requirement because "without [RNA's] purchase of the[] bottles from GK . . . there would have been no design patent infringement at all and more limited trade dress infringement." [Response at 7.]

P&G's contention, however, incorrectly equates Subsection A's "arising from" requirement with "but for" causation. In Brunner, 441 F.3d at 465-66, the Sixth Circuit specifically held that the Ohio long-arm statute's "arising from" requirement requires a "proximate cause relationship between a plaintiff's [] injury claim and the defendant's conduct in Ohio." In so holding, the court noted that the Ohio Supreme Court had rejected "but for" causation in favor of the "more restrictive" "proximate causation" requirement. Id. See also U.S. Diamond & Gold v. Julius Klein Diamonds, LLC, No. C-03-06-371, 2007 WL 1026421, at *7 (S.D. Ohio March 29, 2007) (the Ohio long-arm statute requires that "the defendant's action in the state must be the proximate cause of the injury complained of").

Under Ohio law, "[p]roximate cause is generally established where an original act is **wrongful or negligent** and, in the natural and continuous sequence, produces a result that would not have taken place without the act." Petre v. Norfolk Southern Ry. Co., 458 F. Supp. 2d 518, 527 (N.D. Ohio 2006) (emphasis added). Proximate cause "require[s] more than merely showing that the defendant caused a condition that provided the opportunity for other causal agencies to

15

act." Id. Indeed, the "proximate cause" must have "**directly produce[d] the injury.**" U.S. Diamond & Gold, 2007 WL 1026421, at *7 (emphasis added).

Here, contrary to P&G's conclusory and unsupported statement that "without [RNA's] purchase of the[] bottles from GK . . . there would have been no . . . infringement" [Response at 7], RNA's purchase of the GK Bottles: (1) was not wrongful or negligent; and (2) did not directly produce P&G's alleged injury, which occurs at the point of sale of the Family Dollar Shampoo and Conditioner by RNA to Family Dollar (which did not occur in Ohio), see supra at 6. In obtaining the GK Bottles, RNA did not request GK to copy any current product in the market place. [Harms Dep. at 45.] In fact, GK already had the GK Bottles designed and ready for production [id.], and had a design patent application pending before the USPTO. [Exhibit B, hereto.] The "direct cause" of P&G's alleged injury is the sale of the Family Dollar Shampoo and Conditioner by Family Dollar in Family Dollar Stores, which occurred well down the line from RNA's purchase of the GK Bottles. Accordingly, RNA does not fall within Subsection A(1) because its purchase of the alleged infringing bottles from GK in Ohio is not the proximate cause of P&G's alleged injuries.

V.    **RNA Does Not Derive "Substantial Revenue" From Ohio.**

In addition to the fact that P&G did not suffer an injury in Ohio, as required by Subsection A(4), RNA does not fall within this subsection because it did not "derive substantial revenue" from Ohio, which is likewise required by A(4). As detailed in RNA's Memorandum, "as a rule of thumb, Ohio courts interpret 'substantial revenue' under Subsection A(4) to constitute an amount greater than 5% of the defendant's total revenue." [Mem. at 7-8.] P&G contends that RNA's $43,000 in direct sales to Aldi Foods in Ohio allows for assertion of jurisdiction under Subsection A(4). The $43,000 in sales to Aldi Foods in Ohio, however,

16

represents only .36% (i.e., less than four-tenths of one percent) of RNA's total revenue for the last 12 months. Even if the Court included the $11,070 in indirect sales in Ohio by Family Dollar, this total Ohio revenue represents only .2% (i.e., less than two-tenths of one percent) of RNA's total revenue for the last 12 months, which is not even close to the 5% minimum required by Ohio courts.

**VI.    RNA Does Not Regularly Do Business In Or Solicit Business From Ohio.**

P&G also incorrectly contends that RNA falls under Subsection A(4) because: (1) RNA's direct sales of unrelated products to Aldi Foods in Ohio and the Family Dollar indirect sales of the alleged infringing product in Ohio constitute regularly doing business in Ohio; and (2) RNA regularly solicits business in Ohio through its website. [Response at 13-15.]

Both of these contentions lack any merit. RNA's $43,000 in direct sales of products to Aldi Foods in Ohio, have nothing to do with this case, and $11,070 in indirect sales of the alleged infringing product by Family Dollar in Ohio cannot, by any reasonable standard, meet Subsection A(4)'s "regularly does . . . business" requirement. P&G contends that Bath & Body Works, Inc., 2000 WL 1819478, at *5, supports its contention that .2% in total sales (direct and indirect) in Ohio supports personal jurisdiction over RNA.

Even a cursory reading of this case, however, reveals that it does not support P&G's overly broad contention. The plaintiff/trademark holder in Bath & Body Works, Inc. alleged that defendants (Wal-Mart and the manufacturer) sold the infringing product in Ohio. Id. at *1. The manufacturer defendant moved to dismiss for lack of personal jurisdiction on the grounds that it only sold 492 units (out of 561,979 produced) directly to customers in Ohio and that all other Ohio sales were indirect through Wal-Mart, which received the product from the defendant manufacturer outside of Ohio. Id. at *3. Denying the Rule 12(b)(2) motion to dismiss without

17

prejudice, the court held that the plaintiff should "be afforded sufficient opportunity, through discovery, to present facts showing that [the defendant candle manufacturer] derives sufficient revenue from Wal-Mart's sales of [the alleged infringing candle] in Ohio." Id. at *5. Here, in contrast to Bath & Body Works, Inc., P&G has been afforded full discovery on Family Dollar sales of the alleged infringing product in Ohio. As detailed above, in the last 12 months, Family Dollar has sold only $11,070 of the alleged infringing product in Ohio. Thus, P&G has failed to and cannot show that RNA regularly does business in or solicits business from Ohio.

P&G likewise has failed to and cannot show that RNA's website establishes that RNA regularly solicits business in Ohio. "[M]aintaining a web-site accessible from within [Ohio] is not enough, by itself, to establish specific personal jurisdiction." Beightler v. Produkte Fur Die Medzin, AG, No. 3:07CV1604, 2007 WL 2713907, at *3 (N.D. Ohio Sept. 17, 2007). A defendant's "posting contact information and information about services," id., including pricing information, is not sufficient to assert personal jurisdiction over the defendant. Parshall v. Paid, Inc., No. 07 AP-1019, 2008 WL 2553098 (Ohio Ct. App. June 26, 2008) (website providing details of defendant's products and pricing but not the ability to purchase over the web is not sufficient to assert personal jurisdiction over non-resident defendant). In Premium Balloon Accessories, Inc. v. Control Plastics, 113 Fed.Appx. 50, 51, 2004 WL 1922165 (6th Cir. 2004), the Sixth Circuit affirmed a Rule 12(b)(2) dismissal where the record showed that: (1) the sales of defendant's product in Ohio accounted for only .3% of total sales; and (2) the defendant's website only provided information about the company's products and price and although it allowed visitors to download an order form, purchases could not be made directly over the internet. [A copy of this decision is attached hereto as Exhibit G.]

Here, RNA's website is "used only for informational purposes" and has never resulted in a single customer inquiry, let alone a sale. In fact, like <u>Premium Balloon Accessories, Inc.</u>, while users can request price quotes, although no one has ever done so, users cannot order products from RNA's website. Consequently, RNA's website is not sufficiently interactive to assert personal jurisdiction over RNA solely on the basis of its website, particularly where no sales result from the website. <u>See</u> <u>Carson Optical, Inc. v. Tlelbrands Corp.</u>, No. 3:06 CV 821(CFD), 2007 WL 2460672, at *4 (D. Conn. 2007) (holding that website allowed potential purchasers to request price quotes but did not allow purchases to be made online did not confer personal jurisdiction over out-of-state defendants).

In an attempt to avoid the facts, P&G contends that RNA falls under the Ohio long-arm statute solely because RNA's website accepts "quote requests from all fifty states." [Response at 14.] In addition to being rejected by the above Ohio cases, P&G's assertion is not even supported by the one Michigan case it cites in support of this contention – <u>Neogen Corp. v. Neo Gen Screening, Inc.</u>, 282 F.3d 883, 891 (6th Cir. 2002). In <u>Neogen Corp.</u>, the Sixth Circuit held that the out-of-state defendant's website brought it within the Michigan long-arm statute because the website allowed Michigan residents to order medical tests from the defendant and to check the results of these tests on the website with a special password that defendant e-mailed to its website customers. <u>Id.</u> at 890-91. Here, in contrast, RNA's website does not allow customers to order anything or to check results of anything, and therefore <u>Neogen Corp.</u> is inapplicable.

Accordingly, Subsection A(4) is also not applicable here because RNA does not regularly solicit business or derive substantial revenue from Ohio.

## CONCLUSION

For the foregoing reasons and those set forth in RNA's previously filed Memorandum, Defendant RNA Corporation respectfully requests that this Court dismiss P&G's Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and grant any other relief this Court deems appropriate.

                Respectfully submitted,

                /s/ Frederic A. Mendelsohn

                Frederic A. Mendelsohn (6193281)
                Aaron Stanton (6244251)
                Burke, Warren, MacKay & Serritella, P.C.
                330 North Wabash Avenue, 22nd Floor
                Chicago, Illinois 60611
                (312) 840-7000
                (312) 840-7900 fax
                fmendelsohn@burkelaw.com
                astanton@burkelaw.com

                Robert A. McMahon (0064319)
                Eberly McMahon LLC
                2321 Kemper Lane, Suite 100
                Cincinnati, OH 45206
                (513) 533-3441
                (513) 533-3554 fax
                bmcmahon@emh-law.com

                **Attorneys for Defendant RNA Corporation**