# EXHIBIT F

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED

00 MAY -8  AM 9: 25

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

| | |
|---|---|
| CLEVELAND BROWNS FOOTBALL COMPANY LLC,<br>    76 Lou Groza Boulevard,<br>    Berea, Ohio 44017,<br><br>NATIONAL FOOTBALL LEAGUE PROPERTIES, INC.,<br>    280 Park Avenue<br>    New York, New York 10017,<br><br>                              Plaintiffs,<br><br>        -against-<br><br>HAWAII-PACIFIC APPAREL GROUP, INC.,<br>    3037 Vail Avenue<br>    Los Angeles, California 90040,<br><br>                              Defendant. | 1:00CV 1162<br>Case No.:<br><br>Judge: **JUDGE ALDRICH**<br><br>**MAG. JUDGE BAUGHMAN**<br><br>**COMPLAINT** |

Plaintiffs Cleveland Browns Football Company LLC (the "Cleveland Browns" or

the "Browns") and National Football League Properties, Inc. ("NFLP," and together with the

Cleveland Browns, "Plaintiffs"), by their attorneys Squire, Sanders & Dempsey L.L.P. and White

& Case LLP, for their Complaint against defendant Hawaii-Pacific Apparel Group, Inc., allege as

follows:

## PRELIMINARY STATEMENT

1.      For almost fifteen years, the Cleveland Browns have used and been

identified with the mark DAWG POUND.  Notwithstanding this clear fact, the Defendant has

attempted to extort millions of dollars from the Browns and NFLP by inappropriately claiming

rights to this mark and filing federal trademark applications.  After learning of the Defendant's

trademark filings, the Browns and NFLP have for several years attempted to resolve this matter

amicably, despite Defendant's extortionist demands. Recently, even with these years of settlement discussions, Defendant sent a demand letter to the Browns and NFLP, as well as one of their largest licensees, insisting that the Plaintiffs, the rightful owners, cease all use of the DAWG POUND mark. Thus, the Browns and NFLP are left with no alternative but to bring this action to obtain a declaration of their rights and to prevent further confusion to the public being caused by Defendant's use of the DAWG POUND mark.

      2.    For more than half of a century, the Cleveland Browns have played professional football games in Cleveland, Ohio. In that time, the Browns have become one of the most renowned franchises in all of professional sports, recognizable throughout the United States and, indeed, the world. The Browns' fame has benefited considerably by its on-field success. In the early years, the Cleveland Browns dominated the All-America Football Conference, winning four straight championships. The club continued its winning ways as member club of the National Football League by reaching the post-season playoffs twenty-two times in its first forty years in the National Football League and by winning four league championships. The club has produced thirteen Hall of Fame players and one Hall of Fame coach and has developed an extremely strong fan base.

      3.    The Cleveland Browns' Dawg Pound is part of the rich history of the club. During the fall of 1984, the Cleveland Browns and the public began to refer to the club's defense as the "Dawgs." Soon thereafter, NFLP entered into license agreements with manufacturers and distributors of merchandise to use variations of the DAWG mark in connection with authorized goods. Cleveland Browns fans started arriving at Cleveland Municipal Stadium in dog masks and with other dog-related paraphernalia. Because the fans in the "bleachers" at the open end of the Stadium were most partial to wearing this dog-related apparel, millions of viewers, listeners, readers and, most recently, Internet subscribers everywhere naturally have referred to this section of the Stadium as the "Dawg Pound."

      4.    The trademark DAWG POUND has become indelibly linked with the Cleveland Browns football franchise. The Browns and NFLP, the exclusive licensee of the

[#220758 v1 - Complaint]

trademarks of the Browns, have used and promoted the DAWG POUND mark through marketing and promotional efforts — specifically, the sale of licensed products bearing the DAWG POUND mark in association with the Cleveland Browns.

5.    Upon information and belief, with full knowledge of the preexisting fame, reputation and public association with Plaintiffs of the DAWG POUND mark, Defendant launched a clothing, headwear and footwear line using the designations DAWG POUND, LIL DAWG POUND, TOP DAWG and DA DAWG. Defendant has sold its products, many of which are displayed in connection with sports and contain sports-related themes, including football, in this District and throughout the country in order to trade upon the goodwill inherent in the Browns' famous DAWG POUND mark. As a result, Defendant's acts have harmed Plaintiffs and caused consumer confusion.

6.    In an initial effort to stop Defendant's illegal actions, Plaintiffs filed opposition and cancellation proceedings against Defendant's attempt to obtain federal trademark registrations for its Dawg-related designations in the United States Patent and Trademark Office. The parties have from time to time attempted to negotiate a settlement of these opposition and cancellation proceedings, but have not been able to do so. Now, incredibly, five years after Plaintiffs filed their first opposition proceeding against Defendant and despite knowledge of Plaintiffs' long preexisting and renowned trademark, Defendant has demanded that Plaintiffs cease use of their famous DAWG POUND trademark.

7.    Plaintiffs, therefore, bring this action for unfair competition, dilution and related claims under federal and Ohio statutory and common law, seeking injunctive relief, damages, including treble damages, reasonable attorneys' fees, costs, disbursements and such other and further relief as the Court deems just and proper to prevent Defendant's continued fostering of a false identification and association between Defendant's apparel line and the Cleveland Browns football franchise, and thereby co-opting the goodwill and reputation of Plaintiffs' famous and valuable trademark rights. Plaintiffs also seek a declaration that their use

-3-

of the DAWG POUND trademark does not infringe on or dilute any trademark rights Defendant may have.

## THE PARTIES

8.      Plaintiff Cleveland Browns Football Company LLC is a limited liability company duly organized and existing under the laws of Delaware with its principal place of business at 76 Lou Groza Boulevard, Berea, Ohio 44017.

9.      Plaintiff National Football League Properties, Inc. is a corporation duly organized and existing under the laws of California with its principal place of business at 280 Park Avenue, New York, New York 10017.

10.     Upon information and belief, defendant Hawaii-Pacific Apparel Group, Inc. is a corporation organized and existing under the laws of Hawaii with its principal place of business at 3037 Vail Avenue, Los Angeles, California 90040.

## JURISDICTION AND VENUE

11.     Plaintiffs bring this action for federal false designations of origin and misleading descriptions and representations in violation of Section 43(a) of the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1125(a); federal trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); deceptive trade practices in violation of Section 4165.03 of the Ohio Revised Code; and unfair competition in violation of the common laws of the State of Ohio and of the several states of the United States. Plaintiffs also seek a declaration of non-infringement and non-dilution, the subject matter of which is addressed in the statutes cited in the previous sentence, as well as pursuant to 15 U.S.C. § 1114(1).

12.     This Court has original jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) and 1338(b). The declaratory judgment claim is brought pursuant to 28 U.S.C. § 2201 and, as set forth more fully below, there exists an actual controversy within this

-4-

Court's jurisdiction. This Court has supplemental jurisdiction over all other claims asserted herein under 28 U.S.C. § 1367(a).

13.    This Court has jurisdiction over the person of Defendant under Section 2307.382 of the Ohio Revised Code by virtue of its transacting business in this State, contracting to supply goods in this State, and causing tortious injury in this State as described herein.

14.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) and in this division pursuant to Local Civil Rule 3.8.

### THE MEMBER CLUBS AND THE NFL MARKS

15.    The National Football League ("NFL") is an unincorporated association of thirty-one active member clubs (the "Member Clubs"). Each of the NFL's Member Clubs, including the Cleveland Browns, owns and operates a professional football club engaged in providing entertainment services by playing competitive professional football games in various locations throughout the United States.

16.    The Member Clubs, including the Cleveland Browns, derive substantial revenue from game admission fees and from national television and radio broadcast rights to games. Millions of persons attend the games each year, and millions more follow the respective clubs and games in the electronic and print media and access and download information related to the games via the Internet. The Member Clubs have invested substantial sums of money in establishing a nationwide reputation for the high caliber and excellence of their respective football clubs, including the Cleveland Browns. NFL football is, and for many years has been, the most popular spectator sport in the United States.

17.    To identify and distinguish their respective football clubs and the entertainment services that they provide within the NFL, the Member Clubs, including the Cleveland Browns, have adopted and used in interstate commerce various names, terms, symbols, emblems, slogans, designs, colors and other identifying marks (collectively, the "NFL

-5-

Trademarks"). The NFL Trademarks are well established at common law, and many have been registered pursuant to the provisions of the Lanham Act and/or trademark acts of various states.

### THE CLEVELAND BROWNS CLUB

18.    Plaintiff Cleveland Browns, and its predecessors in interest, has owned and operated its football club in Cleveland, Ohio for over fifty years. In 1946, the Cleveland Browns club was founded by owner Arthur (Mickey) McBride as part of the All-America Football Conference ("AAFC"). The Browns then became a Member Club of the NFL in 1950. In addition to its numerous league championships, the club has produced thirteen Hall of Fame players, including Jim Brown, Otto Graham and Lou Groza. Paul Brown, the club's legendary coach, is also enshrined in the Hall of Fame in Canton, Ohio.

19.    The Cleveland Browns club has become nationally famous. Cleveland Browns fans can be found throughout the entire United States and even, particularly in the age of the Internet, around the world.

20.    In November 1995, owner Art Modell announced he was relocating his franchise to Baltimore, Maryland. By virtue of an agreement among the NFL, the City of Cleveland and Mr. Modell, in 1996, the name, logos, trademarks and rich heritage of the Browns were held in trust for an anticipated successor Browns franchise in Cleveland.

21.    The DAWG POUND mark is part of the Browns' rich heritage and is famous to the public because of the widespread use of the mark DAWG POUND, the great popularity of NFL football and the extensive media coverage of the NFL and the Cleveland Browns. The DAWG POUND mark embodies substantial goodwill and has achieved fame and secondary meaning as an identifier of the Cleveland Browns as the source or sponsor of the merchandise upon which the DAWG POUND mark appears. As described below, parties licensed by NFLP have sold substantial amounts of merchandise under the DAWG POUND mark. As a result, the DAWG POUND mark is an extremely valuable commercial asset and embodies goodwill of incalculable value.

22.     In March and April of 1999, the Browns attempted to register its valuable DAWG POUND mark. <u>See</u> Federal Application Serial Numbers 75/668612, 75/687368, 75/687369, 75/687370, and 75/687371 attached hereto as <u>Exhibit A</u>. Due to the existence of Defendant's application for the mark DAWG POUND and registration for the mark LIL DAWG POUND — both of which Plaintiff has challenged via opposition and cancellation proceedings — and despite Plaintiffs' well-established long prior use of its DAWG POUND mark, the Browns' applications remain in suspension pending resolution of the opposition and cancellation proceedings. As a result, Defendant has deprived the Browns of the valuable substantive and procedural rights and substantial government benefits inherent in a federal trademark registration.

## THE BUSINESS OF NFLP

23.     To fulfill its obligations as the exclusive trademark licensee of the Cleveland Browns and other Member Clubs, Plaintiff NFLP has entered into license agreements with manufacturers and distributors of merchandise by which such companies are licensed to use the DAWG POUND mark in connection with authorized goods ("Licensees"). NFLP has entered into license agreements for use of the DAWG POUND mark with manufacturers and distributors of a wide variety of goods, including T-shirts, sweatshirts, football jerseys, caps, and other articles of clothing, and other products, such as mugs and pennants. On behalf of the Cleveland Browns, NFLP controls and monitors the quality and style of the officially-licensed DAWG POUND products. DAWG POUND merchandise is advertised through a wide variety of media, including over the Internet and in various printed, direct-mail catalogues.

24.     Licensees have invested significant amounts of capital and have devoted substantial amounts of time and effort to the production, marketing and promotion of merchandise bearing the DAWG POUND mark and have established a significant consumer demand for these items through such efforts. Consumers readily identify DAWG POUND merchandise as being sponsored and approved by the Browns.

-7-

[#220758 v1 - Complaint]

25.     Licensees manufacture and distribute merchandise bearing such marks throughout the United States in interstate commerce, where the products are sold in a wide variety of retail outlets.

26.     NFLP derives income in the form of royalty payments from Licensees from the sale of DAWG POUND merchandise.

### UNLAWFUL CONDUCT BY HAWAII-PACIFIC APPAREL GROUP

27.     Upon information and belief, Defendant has long been aware of the vast and valuable goodwill and reputation represented and symbolized by the DAWG POUND mark. Defendant also has long been aware, upon information and belief, that the DAWG POUND mark is used by Plaintiffs and is recognized and relied upon by the public throughout the United States, including the State of Ohio and this judicial District, as identifying various high-quality goods and services of Plaintiffs and their authorized licensees and distinguishing them from like goods and services of others. Upon information and belief, notwithstanding this awareness, and in fact by reason thereof, Defendant is attempting to capitalize upon consumers' favorable and widespread recognition of the DAWG POUND mark.

28.     Without Plaintiffs' consent, Defendants commenced selling in Ohio and in other areas throughout the United States merchandise, including T-shirts, bearing DAWG designations. Some of Defendant's merchandise bears football indicia, including footballs and helmets. Copies of various designs of Defendant's merchandise bearing the aforesaid infringing elements are attached as Exhibit B.

29.     Upon information and belief, Defendant's merchandise was calculated to be sold and is likely to continue being sold in the same retail outlets, and in the same sections of such retail outlets, as Browns merchandise. Upon information and belief, Defendant has sold and distributed the aforesaid merchandise to retail outlets in and around Cleveland, Ohio in close proximity to Browns merchandise.

-8-

30.    Plaintiffs have no adequate remedy at law for Defendant's unlawful conduct.

## TRADEMARK TRIAL AND APPEAL BOARD PROCEEDINGS

31.    Over five years ago, on March 29, 1995, Plaintiff filed a Notice of Opposition to Defendant's application serial number 74/498198 for the mark DAWG POUND in International Class 25 for clothing, namely, footwear, headwear, shirts, pants, shorts, jackets and swimwear. On April 25, 1995, Plaintiffs filed an Amended Notice of Opposition to Defendant's application serial number 74/498198. Opposition number 97,444 is now pending before the Trademark Trial and Appeal Board ("TTAB").

32.    On October 30, 1996, Plaintiffs filed a Notice of Opposition to Defendant's application serial number 75/023191 for the mark DA DAWG in International Class 25 for clothing, namely shirts, pants, shorts, jackets and swimwear; headwear, namely caps, hats, baseball caps, bandannas and Sherpa hats; and footwear, namely shoes, tennis shoes, work shoes, and socks. Opposition number 103,810 is now pending before the TTAB.

33.    On May 5, 1997, Plaintiffs filed a Notice of Opposition to Defendant's application serial number 75/113517 for the mark TOP DAWG in International Class 41 for providing incentive to demonstrate excellence in the fields of athletics, education and/or community service through issuance of awards. Opposition number 106,672 is now pending before the TTAB.

34.    On June 11, 1999, Plaintiffs filed a Petition to Cancel Defendant's registration number 1,963,463 for the mark LIL DAWG POUND in International Class 25 for clothing, namely shirts, pants, shorts, jackets and swimwear; headwear, namely caps, hats, baseball caps and Sherpa hats; and footwear, namely shoes, tennis shoes and work shoes. Cancellation number 29,083 is now pending before the TTAB.

35.    On August 24, 1999, the TTAB granted the parties' motion on consent to consolidate the aforementioned opposition and cancellation proceedings.

[#220758 v1 - Complaint]

36.     On December 21, 1999, Plaintiffs filed a Petition to Cancel Defendant's registration number 1,886,130 for the mark TOP DAWG in International Class 25 for clothing, namely, footwear, headwear, shirts, pants, shorts, jackets and swimwear. Cancellation number 29,744 is now pending before the TTAB.

37.     On February 28, 2000, the TTAB granted the parties' motion on consent to consolidate the aforementioned proceeding with the other previously consolidated proceedings.

38.     During this five-year history, the parties sporadically have attempted to negotiate a settlement of this dispute.

39.     Despite being well aware (and having been on notice since at least as early as March 29, 1995) that Plaintiffs have used the DAWG POUND mark for many years and long before Defendant's alleged date of first use of DAWG POUND, LIL DAWG POUND, DA DAWG and TOP DAWG, on March 31, 2000, Defendant's attorney sent a letter to Plaintiffs' attorney requesting, among other things, that Plaintiffs and/or its licensees and related entities cease and desist from using the mark DAWG POUND. A copy of this letter is attached hereto as Exhibit C. In the March 31, 2000 letter, Defendant's attorney stated that there is a "likelihood of confusion" between Plaintiffs' "use of the term DAWG POUND" and Defendant's "family of marks." Defendant's attorney also stated that Plaintiffs' "use of the term DAWG POUND" dilutes Defendant's "family of marks." On April 25, 2000, Defendant's attorney sent a virtually identical cease and desist letter to one of Plaintiffs' licensees. A copy of this letter is attached hereto as Exhibit D.

**COUNT I**
**DECLARATION OF NON-INFRINGEMENT AND NON-DILUTION**

40.     Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1 through 39 of this Complaint.

41.     Plaintiffs' use of the DAWG POUND mark does not, and will not, (a) cause confusion or mistake or deceive the public in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (b) constitute unfair competition or a false designation of origin in

-10-

violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (c) constitute unfair competition or trademark infringement under state statutory or common law; (d) constitute dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (e) constitute dilution in violation of state statutory or common law; and (f) otherwise violate state or federal statutory or common law.

## COUNT II
## FEDERAL UNFAIR COMPETITION

42.    Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1 through 41 of this Complaint.

43.    The aforesaid acts of Defendant constitute the use of words, terms, names, symbols and devices and combinations thereof; false designations of origin; false and misleading descriptions of fact; and false and misleading representations of fact that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiffs, or as to the origin, sponsorship or approval of Defendant's goods, services or other commercial activities by Plaintiffs.

44.    The aforesaid acts of Defendant constitute the use of words, terms, names, symbols and devices and combinations thereof; false designations of origin; false and misleading descriptions of fact; and false and misleading representations of fact that in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of Defendant's goods, services or commercial activities.

45.    The aforesaid acts of Defendant constitute false designation of origin and false and misleading descriptions and representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46.    The aforesaid acts of Defendant have caused and are causing great and irreparable harm and damage to Plaintiffs, and unless permanently restrained by this Court, said irreparable injury will continue.

-11-

## COUNT III
## FEDERAL DILUTION

47.    Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1 through 46 of this Complaint.

48.    The aforesaid acts of Defendant constitute use that begins after the mark DAWG POUND has become famous and causes dilution of the distinctive quality of the mark DAWG POUND.

49.    The aforesaid acts of Defendant were willfully intended to trade on the Plaintiffs' reputation and to cause dilution of the famous DAWG POUND mark.

50.    The aforesaid acts of Defendant dilute the distinctive quality of the famous DAWG POUND mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

51.    The aforesaid acts of Defendant have caused and are causing great and irreparable harm and damage to Plaintiffs, and unless permanently restrained by this Court, said irreparable injury will continue.

## COUNT IV
## DECEPTIVE TRADE PRACTICES UNDER OHIO STATUTORY LAW

52.    Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1 through 51 of this Complaint.

53.    The aforesaid acts of Defendant constitute passing off Defendant's goods or services as those of Plaintiffs; likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; likelihood of confusion or misunderstanding as to the affiliation, connection, or association with, or certification, by Plaintiffs; representations that Defendant's goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that Defendant has a sponsorship, approval, status, affiliation, or connection that Defendant does not have; representations that Defendant's goods or services are of a particular standard, quality, or grade, if they are of another; and disparagement of the goods, services, or business of Plaintiffs by false representation of fact.

-12-

[#220758 v1 - Complaint]

54.     The aforesaid acts of Defendant constitute willful engagement in a deceptive trade practice knowing them to be deceptive.

55.     The aforesaid acts of Defendant constitute deceptive trade practices in violation of Section 4165.03 of the Ohio Revised Code.

56.     The aforesaid acts of Defendant have caused and are causing great and irreparable harm and damage to Plaintiffs, and unless permanently restrained by this Court, said irreparable injury will continue.

### COUNT V
### UNFAIR COMPETITION UNDER OHIO COMMON LAW

57.     Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1 through 56 of this Complaint.

58.     The aforesaid acts of Defendant constitute unfair competition in violation of Ohio common law.

59.     The aforesaid acts of Defendant have caused and are causing great and irreparable harm and damage to Plaintiffs, and unless permanently restrained by this Court, said irreparable injury will continue.

### RELIEF REQUESTED

WHEREFORE, Plaintiffs pray for a judgment in their favor and against Defendant ordering and declaring:

a.     That Defendant, and each of its officers, directors, agents, servants, employees and representatives, and those persons in active concert or participation with them or any of them, be  permanently enjoined and restrained from:

(1)     Using on or in connection with the production, manufacture, advertisement, promotion, displaying for sale, offering for sale, sale, or distribution of any articles of merchandise, or for any purposes whatsoever, the NFL Trademarks, including the DAWG POUND mark or the marks of the other Member Clubs or the NFL, or any colorable imitations thereof or anything confusingly similar thereto;

-13-

(2)     Using in a context indicative of professional football, on or in connection with the production, manufacture, advertisement, promotion, displaying for sale, offering for sale, sale or distribution of any articles of merchandise, any combination of identifying designations of the Cleveland Browns, including without limitation the designation DAWG, any geographic mark designation and the Cleveland Browns' colors brown and orange, or other similar identifying designations of the other Member Clubs or the NFL, or any colorable imitations of any of the above;

(3)     Representing by any means whatsoever, directly or indirectly, or doing any other acts or things calculated or likely to cause confusion, mistake or to deceive consumers into believing that the Defendant's goods originated with or are the goods of Plaintiffs or the NFL or its Member Clubs, or that there is any affiliation or connection between Plaintiffs and Defendant or their products and from otherwise unfairly competing with Plaintiffs or the NFL or other Member Clubs; and

(4)     Using any mark in a manner so as to dilute the distinctive quality of the famous NFL Trademarks, including without limitation the DAWG POUND mark.

b.     That Defendant be required pursuant to Section 34 of the Lanham Act, 15 U.S.C. § 1116, to file with this Court and to serve upon Plaintiffs within thirty (30) days after service upon Defendant of this Court's injunction issued in this action, a written report by Defendant under oath setting forth in detail the manner in which Defendant has complied with this injunction.

c.     That Defendant and those controlled by Defendant be required pursuant to Section 36 of the Lanham Act, 15 U.S.C. § 1118, to deliver up and destroy all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of Defendant that are, or that embody, any reproduction, copy, counterfeit or colorable imitation of the Cleveland Browns marks and all plates, molds or other means of making the same.

-14-

d.    That Defendant be required to take affirmative steps to dispel any false suggestion of a connection to Plaintiffs by virtue of its infringing activities, including without limitation, all necessary and appropriate corrective advertising measures.

e.    That the United States Patent and Trademark Office, Trademark Trial and Appeal Board refuse Defendant's application serial number 74/498198 and grant judgment in favor of Plaintiffs in opposition number 97,444, refuse Defendant's application serial number 75/023191 and grant judgment in favor of Plaintiffs in opposition number 103,810, refuse Defendant's application serial number 75/113517 and grant judgment in favor of Plaintiffs in opposition number 106,672, cancel Defendant's registration number 1,963,463 and grant judgment in favor of Plaintiffs in cancellation number 29,083, and cancel Defendant's registration number 1,886,130 and grant judgment in favor of Plaintiffs in cancellation number 29,744.

f.    That Plaintiffs recover their damages sustained as a result of Defendant's federal, state and/or common law trademark infringement, unfair competition, dilution and deceptive trade practices, together with an accounting of Defendant's profits arising from such activities, and that the Court exercise its discretion and enter a judgment for such additional sums as the Court shall find to be just, according to the egregious nature of the acts of Defendant.

g.    That Plaintiffs have and recover treble damages under Section 35 of the Lanham Act, 15 U.S.C. § 1117, by reason of the willful and deliberate acts of unfair competition and dilution by Defendant.

h.    That Plaintiffs have and recover their reasonable attorneys' fees pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117 and Section 4165.03 of the Ohio Revised Code.

i.    That Plaintiffs have and recover their taxable costs and disbursements herein.

j.    That Plaintiffs' use of the DAWG POUND mark does not, and will not, (a) cause confusion or mistake or deceive the public in violation of Section 32(1) of the Lanham

{#220758 v1 - Complaint}

Act, 15 U.S.C. § 1114(1); (b) constitute unfair competition or a false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (c) constitute unfair competition or trademark infringement under state statutory or common law; (d) constitute dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (e) constitute dilution in violation of state statutory or common law; and (f) otherwise violate state or federal statutory or common law.

        k.     That Plaintiffs have such other and further relief as the Court may deem just and proper.

<br>

Paul J. Singerman (0018831)
Thomas G. Kovach (0047213)
Thomas S. Babel (0069485)
SQUIRE, SANDERS & DEMPSEY L.L.P.
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114-1304
Telephone: 216-479-8500
Facsimile: 216-479-8780

ATTORNEYS FOR PLAINTIFFS

OF COUNSEL:

Robert L. Raskopf
Marc E. Ackerman
Jennifer L. Johnson
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

[#220758 v1 - Complaint]